1

2

3

4

5

6

7

8

9 **UNITED STATES DISTRICT COURT**

10 **EASTERN DISTRICT OF CALIFORNIA**

11

12 JEANNE C. COLE,                                 1:15-cv-928-GSA

13                         Plaintiff,

14             v.                                  **ORDER REGARDING PLAINTIFF'S**
                                                   **SOCIAL SECURITY COMPLAINT**
15 NANCY A. BERRYHILL, Acting
   Commissioner of Social Security,[1]            (Doc. 13)
16
                        Defendant.
17

18

19 **I.      INTRODUCTION**

20         Plaintiff Jeanne C. Cole ("Plaintiff") seeks judicial review of the final decision of the

21 Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

22 Disability Insurance Benefits ("DIB") benefits pursuant to Title II of the Social Security Act.

23 (Docs. 1 and 13). The Commissioner filed an opposition (Doc. 18).  Plaintiff filed a reply. (Doc.

24 22).  The matter is currently before the Court on the parties' briefs which were submitted without

25 oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2]  After reviewing

26

27 ――――――――――――――――――
   [1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A.
   Berryhill is now the acting Commissioner of Social Security.
28
   [2] The parties have consented to magistrate judge jurisdiction. (Docs. 8 and 10).

the administrative record and the pleadings, the Court finds the ALJ's decision is supported by substantial evidence and denies Plaintiff's appeal.

## II.      BACKGROUND AND PRIOR PROCEEDINGS[3]

Plaintiff filed an application for DIB on April 8, 2011, alleging a disability beginning December 20, 2006. AR 34; 148-152.  Her application was denied initially and on reconsideration on November 14, 2011. AR 34. Plaintiff requested a hearing before an administrative law judge ("ALJ"). AR 22.  ALJ Trevor Skarda conducted a hearing on December 10, 2012 (AR 56-87), and published an unfavorable decision on January 31, 2013. AR 34-48.  Plaintiff filed an appeal and the Appeals Council denied the request for review on July 24, 2104, rendering the order the final decision of the Commissioner. AR 1; 18-20.

## III.     ISSUES FOR JUDICIAL REVIEW

Plaintiff challenges the ALJ's non-disability determination.  She alleges the ALJ: (1) improperly weighed the medical opinions in her case. Specifically, she contends that the ALJ did not properly consider the opinion of Rhonda Johnson, a certified physician's assistant who treated her, and Dr. Patel, her treating pulmonologist's opinions, as well as several other doctors' opinions related to her gastrointestinal condition; (2) failed to discuss whether fibromyalgia met or equaled a listing impairment; (3) erroneously rejected Plaintiff's pain and fatigue testimony; and (4) improperly relied on the vocational expert's testimony at step five resulting in erroneously concluding that Plaintiff could work as an addresser, a lens inserter, and a touch up screener.[4] Plaintiff argues that the case be remanded for a calculation of benefits, or in the alternative, that the case be remanded for further proceedings. (Doc. 13, pgs. 6-28; Doc. 22, pgs. 3-8). The

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[4] In the opening brief Plaintiff also makes a brief argument that the ALJ improperly used evidence (Dr. Bolschwing's evaluation) from a prior application and that remand is required. (Doc. 13, pg. 6:25-27; pg.8:1-6).  Plaintiff's argument consists of three sentences with incomplete case citations. The Court is unable to understand the argument given Plaintiff's lack of specificity and analysis and considers that argument waived. See *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our circuit has repeatedly admonished that we cannot manufacture arguments for an appellant and therefore we will not consider any claims that were not actually argued in appellant's opening brief.  Rather, we review only issues which are argued specifically and distinctly in a party's opening brief."); *Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 872 (9th Cir. 2001) *aff'd sub nom. Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003) ("We therefore cannot grant relief [on this] argument, because he has failed to develop the record and his argument sufficiently to render it capable of assessment by this court.").

Commissioner opposes each of these arguments and contends that the ALJ's evaluation of the medical evidence, his credibility determinations, and his analysis at step five were proper and are supported by substantial evidence. (Doc. 17, pgs. 6-16).

## IV.    THE MEDICAL RECORD

### A.  Summary of the Medical Treatment Notes

Plaintiff complained of excessive daytime sleepiness.  During a consultative examination on August 1, 2007, pulmonologist Kirit Patel, M.D. diagnosed her with obstructive sleep apnea, fibromyalgia, gastroesophageal reflux, depression, and mild exogenous obesity. AR 434-435.  A sleep study revealed that Plaintiff had three hundred eighty three minutes of total sleep time with normal sleep efficiency. AR 436. Plaintiff was advised that she could undergo nasal CPAP therapy and should consider weight loss, avoidance of pre-sleep alcohol intake, and avoidance of supine sleeping position. AR 436.

Plaintiff began seeing Physician's Assistant ("PA") Rhonda Johnson at the Central Valley Pain Management and Wellness Clinic in September 2007 for a re-evaluation of cervical and low back pain, anxiety, and myofascial pain syndrome.  She reported a pain rating of seven out of ten and a depression rating of six to seven out of ten. AR 387.  Plaintiff was prescribed Duragesic (a fentanyl transdermal system to treat pain), Norco (for pain) and Omeprazole (for acid reflux). AR 387.

She continued to see PA Johnson in 2008 and 2009 for monitoring and adjustment of her medications.  During this time she complained of pain, fatigue, and headaches.  AR 389-412. In July 2008, Plaintiff was doing well with medications despite ongoing pain throughout her body, muscle weakness, and swelling. AR 387; 393.  The dosage of her Duragesic patch was reduced in early August 2008 (AR 391) because of concerns that she was over medicated (AR 389-390), and Plaintiff was prescribed Avinza for pain. AR 397.  Plaintiff's reported pain control was good on the new medications. AR 391. Later in August 2008, she presented with headaches and reported soreness after working in her garden, but continued doing well on the decreased dosage of Duragesic. AR 393.  In October 2008, Plaintiff reported taking Xanax for anxiety and Lexapro in addition to Duragesic. AR 395-396.  Plaintiff requested that the Duragesic patch be discontinued

and another medication be substituted in its place. AR 395.  Plaintiff was prescribed Valium. AR 396. The Duragesic dosage was reduced further and the Xanax was discontinued. AR 396. In November 2008, it was reported that Plaintiff was taking Ambien (for sleep), Lexapro (for depression), Zanaflex (for acid reflux), Trazodone (for pain), Lexapro (for depression), and Norco (for pain). Plaintiff's prescriptions for Avinza and Valium were also renewed. AR 397.  She complained of fatigue in November and December. AR 397; 399.

In February 2009, Plaintiff complained of headaches, neck pain, and lower back pain.  She indicated that she was doing great on her medication schedule and reported a two out of ten on the pain scale. AR 401. She continued to be in school and was doing well despite having "pain all over." AR 403.  In April 2009, she complained of fatigue but denied insomnia. AR 403. She was cleared for low impact physical education, and assessed her pain at five out of ten. AR 404. Plaintiff continued to complain of headaches and pain in her neck and shoulders throughout 2009 reporting a three in June (AR 405), a one in September (AR 407) and a four in November (AR 409). She complained of insomnia, fatigue, and anxiety in September 2009. AR 407.  In December 2009, Plaintiff reported having her "worst headache ever" but was sure it would be under control and rated her pain at an eight out of ten. AR 411.

In 2010, there was no significant change in Plaintiff's condition or prescriptions. AR 413-425. She complained of headaches, neck and shoulder pain. AR 413; 415; 417; 419; 421.  She also reported she was under stress in September and October which was exacerbating her pain and making her anxious. She was prescribed Xanax but did not take it unless it was absolutely necessary. AR 423; 425. As of October of that year, she was "stable with her current medications" and was still anxious because she was in school completing a degree in archaeology. AR 425.  Her reports of pain on a ten point scale in 2010 were as follows: June - four (AR 413); March - three (AR 415); July - one (AR 419); September- three to four (AR 421- 424); October - three (AR 425). She reported fatigue only once in September. AR 421; 423.

In January 2011, Plaintiff presented with pain in her back, shoulder along with fatigue. AR 461. She reported increased stress and requested to see a counselor. AR 461. She continued to report pain, depression, anxiety and fatigue in March, May, and June 2011 reporting five, eight

and seven (AR 467) on a pain scale for those months respectively.

On June 3, 2011, Plaintiff was seen at Golden Valley Health Center for lower abdominal pain that she had been experiencing for two months. AR 264. Physician's Assistant Rios referred her to a gastroenterologist for suspected obstruction of a bile duct. AR 265.

On June 6, 2011, an abdominal sonogram performed by Dr. Kleiger indicated a "constellation of findings considered highly suspicious for obstruction of the common bile duct" with dilation of the "main pancreatic duct, gallbladder, and common bile duct." AR 258.

On June 15, 2011, Dr. Carlos Canale, M.D. a gastroenterologist, performed a consultative exam and opined he did not believe Plaintiff's pain related to a common bile duct obstruction.  He recommended a colonoscopy and a MRI to evaluate the common bile duct more closely. AR 310-311. A MRI of Plaintiff's abdomen was preformed and mild intra and extrahepatic biliary ductal dilatation, distal dilatation pancreatic duct, as well as rapid tapering at the level of the ampulia was diagnosed. AR 283.

In June 28, 2011, Plaintiff returned to Central Valley Pain Management complaining of headaches, neck, back, and chest pain. AR 467.  She also reported lower abdominal pain and requested additional pain medication that was stronger than Norco. AR 467.  PA Johnson added Oxycodone to Plaintiff's medications. AR 468.

On July 27, 2011, Plaintiff returned to see PA Johnson and presented with neck, back, lower abdominal pain, chest pressure, and a headache. AR 469-470. It was noted that Plaintiff's insomnia, fatigue, depression, and anxiety had worsened.  AR 469. Plaintiff reported an eight on a pain scale of ten and indicated that the Norco worked better to relieve her pain.  PA Johnson discontinued the Ocxycodone and increased her Avinza, as well as reduced her Trazodone. AR 470.

On August 15, 2011, Plaintiff returned to PA Johnson complaining of migraines, twitching, fatigue, achiness, blurry vision, and bruising on the inside of her hands. AR 471.  She also reported back, hip, shoulder, arm, feet, and back pain as a six on a pain scale of ten.  PA Johnson  discontinued the Ocxycodone, and Norco was added back into Plaintiff's prescription regimen, not to be taken more than six times a day. AR 470.

On August 15, 2011, Dr. Isaac Faraji performed an endoscopic retrograde cholangiopancreatography, sphicterotomy, and biliary stent placement. AR 313-315. On August 15, 2011, Plaintiff was treated at the emergency room by Dr. Truoung Van Thinh and hospitalized due to vomiting blood and abdominal pain. AR 292-308.  Upon examination, Plaintiff reported a nine out of ten on the pain scale. AR 292. Dr. Truong noted that, Plaintiff "has been doing well, in her normal usual state of health," and that apart from gastrointestinal issues, the ten systems were reviewed and found to be negative." AR 293.

An abdominal CAT scan was performed on August 16, 2011, which revealed inhomogeneity in the head of the pancreas with fluid around the head of the pancreas with probable cholelithiasis (inflammation of the gall bladder). Mild colitis was also noted. AR 305. On August 17, 2011, Dr. Canale performed an esophagogastroduodenoscopy with biopsies due to abdominal pain and hematemesis (vomiting blood). Gastritis was noted. AR 270-271. Following those procedures, Plaintiff suffered pancreatitis. AR 296.  She remained in the hospital and was discharged on August 21, 2011, after she was stabilized. AR 286-287.

Following surgery, on August 25, 2011, Plaintiff's presented to PA Johnson with neck and bilateral shoulder pain on her left side, rating the pain four out of ten. AR 473. Her medication helped decrease the pain and her physical examination was generally normal despite some tenderness and pain when flexing her neck. AR 473-474. From a psychological standpoint, Plaintiff presented with with normal cognition, memory, thought, mood, and affect. AR 474.

Plaintiff continued to be monitored by PA Johnson once every two months from October 2011 through September 2012. AR 475-496. She complained of headaches, insomnia and fatigue; continued to have pain in her back, neck, and shoulder; and exhibited tenderness in various areas. *Id*.  However, it was noted during these visits that Plaintiff was ambulatory, could perform self-care and was able to drive. AR 477; 479; 482; 485; 487; 489; 491; 493.  At various times during this period, Plaintiff was taking Trazodone (for depression), Xanax (for anxiety), Norco (for pain), Abilify (for depression), Avinza (for pain) and Lexapro (for depression).  AR 476; 480; 483; 485-486; 490; 494.  Her pain fluctuated from a four to eight on a ten point scale with six being the average on several visits. AR 475 (October 2011 – seven); AR 477 (Nov. 2011-

four); AR 479 (Jan. 2012 – six); AR 482 (Mar. 2012 – six); AR 483 (April 2012- six); AR 487 (May 2012 – seven); AR 489 (July 2012 – five); AR 491(August 2012 - eight).  In October 2011, it was noted that she had been overdoing it with household chores and requested a Toradol injection. AR 475.  In November 2011, she was taking Trazodone at night for sleep, was rarely taking the Xanax for anxiety, and that she was going to a gym. AR 477.

In June 2012, Plaintiff was seen by Dr. Jaskaran S. Dhingsa, M.D. for right-sided abdominal pain lasting for five days and feeling itchy all over her body. AR 449.  It was noted that Plaintiff exercises occasionally. AR 450.  Dr. Dhingsa did not find any anomalies on physical examination except for abdominal tenderness and constipation. AR 449-453.  Plaintiff was prescribed Miralax and Colace for constipation. AR451; 453.  A comparison abdominal ultrasound in June 2012 indicated persistent biliary ductal dilatation, including prominence of the pancreatic and common bile duct, no cholelithiasis, and was suspicious for hepatocellular disease. AR 448.

In June 2012, Dr. Faraji performed a consultative examination at the request of Dr. Dhingsa and found Plaintiff to be well developed . . . [and] in no apparent distress, with normal ranges of motion, appropriate affect and grossly normal memory. AR 455-456. Plaintiff was negative for fatigue but complained of panic attacks and either sleeping too much or not enough. AR 455.  Dr. Faraji diagnosed Plaintiff with gastroesophageal reflux disease. AR 457.

Dr. Faraji saw Plaintiff again on June 27, 2012 for abdominal pain and elevated liver function test ("LFT").  An endoscopic retrograde cholangiopancreatography and a change of her stent was ordered. AR 459-460. An August 10, 2012, a hepatobiliary iminodiacetice acid scan ("HIDA scan") used to diagnose conditions of the gallbladder, liver and bile ducts was negative. AR 454.

In September 2012, she returned to PA Johnson complaining of migraine headaches and depression because he father was dying.  She did not want additional medication but requested and received a Toradol injection. A 493-494. On November 1, 2012, Plaintiff underwent surgery with Dr. Greenbarg who performed a cholecystectomy (surgical removal of gallbladder) in an effort to address Ms. Cole's pain. AR 499-507. An examination of the removed gallbladder

revealed no gallstones but chronic cholecystitis (inflammation of the gallbladder). AR 505.

### B. Summary of Medical Opinions

#### 1. Medical Impairments

##### a. Dr. Robert Wagner, M.D.

In July 2011, Robert Wagner, M.D., a consultative internist examined Plaintiff for complaints of asthma and fibromyalgia with chronic fatigue. AR 368-372.  Dr. Wagner reviewed Plaintiff's medications and noted she was taking Oxycodone, Avinza, Lexapro, Xanax, Trazodone, and Primatene pills and inhaler (for asthma).  AR 369.  Plaintiff complained of "hurt[ing] everywhere," "memory fog," some problem sleeping, and chronic fatigue.  AR 368. She reported completing some household tasks, driving, shopping, having "her own activities [of] daily living," and doing "some stretching exercises and light walking." AR 370. On examination, Dr. Wagner found Plaintiff to be largely normal including no limitations in her range of motion, and having 5/5 motor strength despite appearing somewhat tired and displaying some tenderness. AR 369-371. Dr. Wagner diagnosed Plaintiff with mild asthma and fibromyalgia noting that although there were minimal objective findings, Plaintiff had many of the typical trigger points for fibromyalgia. AR 371. Based on that examination, Dr. Wagner opined that Plaintiff had no limitations. AR 371-372.

##### b. Dr. Cochran, M.D.

On November 2, 2011, Barabara Cochran, M.D., a non-examining state agency physician completed a physical residual functional capacity assessment of Plaintiff. AR 331; 349-356. After reviewing the medical evidence she opined that Plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, and sit and stand for six hours in an eight hour day. AR 350-353. Dr. Cochran found Plaintiff's statements to be only partially credible based on the fact that: (1) Plaintiff alleged she sat most of the day; (2) during a medical examination she stated that she was attending school, cared for her father, was independent in her activities of daily living, and shopped; (3) although she alleged difficulty with lifting, bending, and standing, the objective medical evidence failed to confirm any such limitations; and (4) she was cleared for physical education. AR 354.

c. <u>Rhonda Johnson, Certified Physician's Assistant</u>

On April 17, 2012, PA Johnson completed a medical source statement. AR 442-447.  Ms. Johnson treated Plaintiff since September 25, 2007. AR 387. She diagnosed Plaintiff with chronic neck pain, chronic lower back pain, depression, insomnia, fibromyalgia, and headaches. AR 443. She noted Plaintiff had eighteen tender points and had pain ranging from six to eight on a ten point scale, and fatigue ranging from five to ten on a ten point scale. AR 443. Ms. Johnson determined that Plaintiff could sit, stand, and walk for a period of two hours in an eight hour work day, and it would be necessary or medically recommended for her to sit continuously. AR 444. She further opined that Plaintiff would not be able to stoop, push, pull, bend or kneel. AR 445. She also found that Plaintiff had psychological limitations, had limited vision, and would need to avoid temperature extremes, humidity, dust, and heights. AR 445.  She noted that Plaintiff was prescribed Norco (with no side effects), Xanax (which causes drowsiness), Ability (with no side effects), Trazodone (which causes nighttime sleepiness), Lexapro (with no side effects), and Avinza (no side effects). AR 445.  She opined that Plaintiff's pain and fibromyalgia affects her sleep, cognition, and mobility.  She has more bad days than good, and suffers from fatigue and depression. AR 446. Ms. Johnson opined that Plaintiff would be absent from work more than three times a month. AR 447.

2. *Psychological Impairments*

a. <u>Dr. Debrorah Von Bolschwing, Ph.D</u>.

In 2007, Deborah Von Bolschwing, Ph.D., completed a psychological consultative examination.  AR 437. Plaintiff reported fibromyalgia and chronic fatigue syndrome, as well as depression and anxiety since March 1998. AR 437-438. It was noted that although Plaintiff been taking Cymbalta for depression since 2005 and was taking Buspar for anxiety, she had never attended therapy and had no psychiatric hospitalizations. AR 438. Dr. Bolschwing diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood. AR 439. She noted Plaintiff had mild difficulty maintaining attention and concentration for the duration of the evaluation, but she was able to interact appropriately during the interview.  The doctor opined that Plaintiff's ability to interact with the public, supervisors, and coworkers appeared to be adequate.

9

No other limitations were assessed. AR 439-440.

b. Dr. Jacklyn Chandler, Ph.D.

On July 19, 2011, Dr. Jacklyn Chandler, PhD., performed a psychological consultative examination. AR 45; 363-365. Plaintiff reported having depression, anxiety and chronic pain since 1996. She began having panic attacks in 2007 and has been taking medications prescribed by her primary care physician which helped reduce her symptoms. AR 364. She has never attended therapy with a mental health professional or had psychiatric hospitalizations. AR 363-364.  Plaintiff appeared fatigued but was well oriented, walked with a slow gate, and was unkempt. AR 364. Despite restricted mood and moderately dysphoric affect, she was able to understand, remember, and carry out simple and complex instructions. She scored 28/30 on the Mini Mental State Examination.  AR 364-365. Dr. Chandler observed that Plaintiff had significant economic problems and assessed her Global Assessment of Functioning (GAF) score at 60 (indicating moderate symptoms or moderate difficulty in social, occupational or school functioning). AR 371-372.  She diagnosed Plaintiff with a pain disorder with both psychological factors and chronic pain, and adjustment disorder with mixed anxiety and depressed mood with chronic panic attacks. AR 364-365. As to work limitations, however, the doctor noted that Plaintiff was able to understand, remember, carry out simple and complex instructions and she appeared capable of adapting to changes in routine work settings. AR 365.  Based on observations of Plaintiff's behavior during the interview and her psychiatric history, the doctor opined that Plaintiff's ability to interact with the public, supervisors, and coworkers would be moderately impaired. AR 365.

c. Dr. Tomas Unger, M.D.

In November 2011, state agency psychiatrist Tomas Unger, M.D., reviewed the medical evidence and opined that Plaintiff was mildly limited in activities of daily living and maintaining concentration, persistence or pace, and moderately limited in maintaining social functioning. AR 327-328. He also completed a mental residual functional capacity assessment finding that Plaintiff would have only minor limitations in understanding, memory, and sustained concentration and persistence. AR 329. However, the doctor noted that due to Plaintiff's

depressive and anxiety symptoms, she would intermittently have difficulty interacting appropriately with the general public, supervisors, and coworkers but she could perform tasks on a sustained basis in a work environment where she had minimal contact with the general public. AR 329.

## V.   THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. § 404.1520(a).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4).  The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1513.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;  (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work;  and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)(4).

///

11

## VI.     SUMMARY OF THE ALJ'S FINDINGS

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 34-48.  At step one, he found that Plaintiff last met the insured status requirements on March 31, 2012, and that she had not engaged in substantial gainful activity during the period from her alleged onset date of December 20, 2006 through her date last insured. AR 36.  At step two, the ALJ identified chronic fatigue syndrome, fibromyalgia, affective disorder with depression, adjustment disorder with anxiety and panic attacks, pain disorder, obstructive sleep apnea, and asthma as severe impairments.  AR36.  At step three, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 36-38.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 CFR § 404.1567 (a) except that Plaintiff could: frequently climb ramps and stairs; occasionally climb ropes, ladders and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to operational control of dangerous moving machinery and unprotected heights; perform simple, routine, repetitive tasks, and low stress work, which is defined as no more than occasional decision making and only occasional changes in the work setting with no interaction with the public. AR 38-46. Given these limitations, the ALJ determined that Plaintiff could not perform her past work as an administrative assistant or child monitor.  AR 46. However, the ALJ determined that Plaintiff could perform other jobs that existed in significant numbers in the national economy including an addresser, a lens inserter, and a touch up screener. AR 46-47.

## VII. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which,

considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

**VIII. DISCUSSION**

### A. The ALJ Properly Evaluated the Medical Evidence.

Plaintiff contends that that ALJ's evaluation of the medical evidence was not proper. Specifically, she alleges that the ALJ rejected PA Johnson's findings by failing to address the factors in SSR 06-3p and erroneously relied upon the state agency physicians' opinions. In doing so, the ALJ ignored several other treating physicians' opinions without giving specific and legitimate reasons for doing so. She also alleges that the ALJ did not adequately assess Plaintiff's fibromyalgia as a listed impairment at step three. (Docs. 20, pgs. 6-28). The Court is not persuaded by Plaintiff's arguments.

When assessing the medical evidence, the ALJ discussed the opinions of three medical professionals: 1) PA Johnson who treated Plaintiff since 2007 at Central Valley Pain Management and offered an opinion in April 2012 (AR 442-447); 2) Dr. Wagner, a state agency doctor who performed a consultative examination in July 2011 (AR 368-440); and 3) Dr. Cochran, a non-examining state agency physician who rendered an opinion in November 2011. AR 350-353. The ALJ gave the greatest weight to Dr. Wagner's findings, moderate weight to Dr. Cochran's findings, and little weight to PA Johnson's opinion. AR 43-46. A review of administrative records reveals the ALJ's assessment of the medical evidence is supported by substantial evidence.

An ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. CSS*, 533 F.3d at 1164. To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected for specific and legitimate reasons. *Garrison v. CSS*, 759 F.3d 995, 1012 (9th Cir. 2014); *Ghanim v. CSS*, 763 F.3d 1155, 1161(9th Cir. 2014).

However, only physicians and certain other qualified specialists are considered "[a]cceptable medical sources." *Molina v. CSS*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also* 20 C.F.R. § 404.1513(a). Physician assistants are not acceptable medical sources but are considered "other sources" unless the record establishes that the PA worked under a physician's close supervision. *Molina v. CSS*, 674 F.3d at 1111; *See also*, *Taylor v. Social Security Administration*, 659 F. 3d 1228, 1234 (9th Cir. 2011) (finding a nurse practitioner can constitute an acceptable medical source opinion when that individual works closely under the supervision of a doctor); 20 C.F.R. § 404.1513(d) (defining other medical source).[5] An ALJ must evaluate the opinions from other sources, and may discount such testimony if the ALJ provides germane reasons for doing so. *Britton v. Colvin*, 787 F. 3d at 1011 (9th Cir. 2015); *Ghanim v. Colvin*, 763 F.3d at 1161(9th Cir. 2014); *Molina v. Astrue*, 674 F. 3d at 1111.

Plaintiff argues that the ALJ was required to provide specific and legitimate reasons for discounting PA Johnson's opinion but she has cited nothing in the record, nor has the Court found any evidence that a physician was closely supervising PA Johnson. Plaintiff makes an unsupported contention that Dr. Rhodes is a doctor at the pain clinic where Plaintiff was treated with a specialty in fibromyalgia. (Doc. 13, pg. 3, n. 2).  However, there is no evidence that Dr. Rhodes ever treated Plaintiff or supervised her care. Therefore, the ALJ was only required to give germane reasons for discounting PA Johnson's opinion.  Here, the ALJ not only gave germane reasons, but his findings also satisfy the higher standard of specific and legitimate reasons for rejecting PA Johnson's opinion.

When evaluating the medical evidence, the ALJ noted that although PA Johnson had a longitudinal history with the Plaintiff, he gave her opinion little weight because her findings were inconsistent with the medical record. AR 43. As part of this analysis, the ALJ assessed Plaintiff's credibility and found that she was not credible.[6] AR 39-46. He summarized many of Plaintiff's appointments with PA Johnson over a five year period (AR 41-43), and described all of the medical opinions assessing her fibromyalgia in detail. AR 43-46.  He gave the greatest weight to

---

[5] This regulation was superseded by 20 C.F.R. § 404.1513(3) for claims filed after March 27, 2017.

[6] As described in more detail in this order, the ALJ's credibility analysis is supported by substantial evidence.

Dr. Wagner's opinion who assessed Plaintiff with no physical limitations (AR 371-372), and gave moderate weight to Dr. Cochran's findings, who limited Plaintiff to light work. AR 349-356.  He found that medications had been relatively effective in controlling Plaintiff's symptoms (AR 43) and that Dr. Wagner and Dr. Cochran's opinions were consistent with the record as a whole in accordance with SSR 06-3p. AR 43-46.

As Defendant notes, the opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Thomas v. Barnhart*, 278 F. 3d 947, 957 (9th Cir. 2002).  Here, Dr. Wagner performed his own consultative examination which revealed no functional limitations, although he noted Plaintiff had many of the traditional trigger points consistent with fibromyalgia. AR 44-45; 368-372.  Moreover, Dr. Cochran completed a review of the entire record which included examining Dr. Wagner's opinion and years of PA Johnson's notes. AR 331. After completing a full physical functional capacity assessment, she recommended that Plaintiff be limited to light work with several other limitations. AR 44-45; 349-356.  The ALJ's assessment of the medical evidence is supported by substantial evidence because he accorded the greatest weight to the only two accepted medical source opinions in the record.  He then gave Plaintiff the benefit of the doubt by formulating a RFC that limited her to sedentary work which was more restrictive than either doctor recommended. AR 38.  Therefore, the ALJ's assessment of the medical evidence was proper.

Plaintiff has argued the ALJ erred because he failed to consider Dr. Patel's opinion, one of Plaintiff's treating physicians. (Docs. 13, pg. 19-21; Doc. 22, pg. 4).  However, this is not the case.  First, Dr. Patel was not a treating physician. He was an examining pulmonologist who performed a sleep study during a consultative examination in 2007. AR 436.  He recommended that Plaintiff undergo CPAP therapy, lose weight, decrease her alcohol intake and avoid sleeping in the supine position. AR 436.  Second, while the ALJ did not weigh the opinion per se, the ALJ summarized the doctor's findings and determined that Plaintiff's obstructive sleep apnea was a severe impairment.  AR 36-37; 40.  He therefore clearly considered the report.

Plaintiff contends that the ALJ was required to weigh this opinion, as well as the opinions of

Drs. Dhingsa, Atwal, Thinh, Faraji, Canale, and Greenbarg who treated Plaintiff's gastrointestinal condition. AR 270-272; 292-308; 305; 313-315; 449-453; 455-457; 499-507.  The Court agrees that the ALJ did not discuss or consider Plaintiff's gastrointestinal conditions, or any of the related treatment notes in his order. This omission was error.  However, the Court finds that this error was harmless as none of these doctors, including Dr. Patel, identified any functional limitations that would have affected Plaintiff's ability to work. *Molina v. Astrue*, 674 F.3d at 1115. (An error is harmless if it is "inconsequential to the ultimate nondisability determination"). Medical opinions are statements from acceptable medical sources that are judgments about the severity of the impairment including symptoms, diagnosis, and prognosis, as well what a person can to do despite impairment, and physical or mental restrictions. 20 CFR § 404.1527(a)(1).  The mere diagnosis of an impairment is not sufficient to sustain a finding of disability.  *Key v. Heckler*, 754 F. 2d 1545, 1549 (9th Cir. 1985); *See also, Matthews v. Shalala*, 10 F. 3d 678, 680 (9th Cir. 1993).

Here, Plaintiff experienced pancreatitis after experiencing complications due to the surgical placement of a stent. AR 313;315; 296.  After her gallbladder was removed, a biopsy revealed chronic cholecystitis. AR 505. None of the doctors treating Plaintiff for these conditions provided a medical opinion that identified any functional limitation that would affect her ability to work, nor has Plaintiff identified any aspect of those records that would have changed the ALJ's disability determination.  In fact, Plaintiff's entire discussion of the doctors treating her gastrointestinal condition consists of three paragraphs of boilerplate language with only general references to the record.  Therefore, the ALJ's failure to discuss Plaintiff's gastrointestinal conditions, and the related medical records was at most harmless error.

**B.   The ALJ's Fibromyalgia Analysis at Step Three Does Not Require Remand.**

Plaintiff further argues that the case must be remanded because the ALJ did not properly consider Plaintiff's fibromyalgia at step three as a listed impairment under SSR 12–2p. (Doc. 13, pg. 28). However, the Ninth Circuit has held that an alleged case of fibromyalgia cannot meet the listing requirements because fibromyalgia is not a listed impairment. *Britton v. Colvin*, 878 F. 3d 1011, 1012 (9th Cir. 2015); SSR 12-2p 2012 WL 3017612 (July 25, 2012) ("FM cannot meet a

1   listing in appendix 1 because FM is not a listed impairment"). Therefore, when assessing

2   fibromyalgia at step three, the analysis focuses on whether fibromyalgia medically equals a

3   listing, or whether it medically equals a listing in combination with at least one other medically

4   determinable impairment. *Id*.

5         To demonstrate that a condition matches a listed impairment, the claimant must show that

6   the impairment meets all of the medical criteria in a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530

7   (1990). "An impairment that manifests only some of those criteria, no matter how severely, does

8   not qualify." *Id*. To "equal a listed impairment, a claimant must establish symptoms, signs and

9   laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant

10  listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §

11  404.1526(a). Under the law of this circuit, an ALJ is not required to discuss the combined effects

12  of a claimant's impairments or compare them to any listing in an equivalency determination,

13  unless the claimant presents evidence in an effort to establish equivalence. *Burch v. Barnhart*,

14  400 F.3d 676, 683 (9th Cir. 2005); *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (An

15  ALJ's failure to consider equivalence was not reversible error because the claimant did not offer

16  any theory, plausible or otherwise, as to how his impairments combined to equal a listing

17  impairment).

18      In this instance, Plaintiff has not identified which medical evidence establishes equivalence,

19  nor has she offered any theory about how her combined impairments equal a listing. She merely

20  states the case must be remanded so that the ALJ can complete an analysis under SSR 12-2p.

21  This is insufficient. Moreover, although the ALJ did not specifically elaborate on his rationale

22  under the severity impairments heading, he provided a comprehensive recitation of the medical

23  evidence related to Plaintiff's fibromyalgia in the order which provided an adequate statement for

24  his non-disability determination. *Gonzalez v. Sullivan*, 914 F. 2d 1197, 1201 (9th Cir. 1990)

25  ("The Commissioner's "four page 'evaluation of the evidence' is an adequate statement of the

26  'foundations on which the ultimate factual conclusions are based'"). Therefore, the ALJ

27  appropriately made a finding of "not disabled" at step three and then proceeded to step four.

28  ///

### C.  The ALJ Properly Discredited Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ's credibility determination was improper because he did not identify which part of the Plaintiff's testimony he found not credible and why.  Additionally, she contends that the ALJ failed to adequately address Plaintiff's testimony regarding her fatigue, including assessing any side effects of her medications. (Doc. 13, pgs.15-19; Doc. 22, pgs. 5-7).  A review of the entire record reveals Plaintiff's arguments are misplaced.

A two-step analysis applies at the administrative level when considering a claimant's credibility.  *Treichler v. Comm. of Soc. Sec*., 775 F. 3d 1090, 1098 (9th Cir. 2014).  First, the claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Id.*  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so. *Id.; Brown-Hunter v. Colvin,* 806 F.3d 487, 493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").  Factors an ALJ may consider include: 1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See Thomas v. Barnhart*, 278 F. 3d at 958-959; *Light v. Social Security Administration*, 119 F. 3d 789, 792 (9th Cir. 1997), *see also* 20 C.F.R. § 404.1529(c).

In this case, the ALJ found that Plaintiff's impairment could reasonably be expected to produce her alleged symptoms.  AR 39.  However, the ALJ concluded that the Plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision" AR 40.  This finding satisfied step one of the credibility analysis.  *Smolen v. Chater*, 80 F.3d 1281-82 (9th Cir. 1996).

18

As noted above, because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Brown – Hunter*, 806 F. 3d at 493; *Smolen*, 80 F.3d at 1283-84; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his or her symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan,* 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Brown-Hunter*, 806 F. 3d at 493.

In discrediting Plaintiff's credibility, the ALJ relied on: (1) Plaintiff's activities of daily living, including taking care of her father and pets, which he found to be inconsistent with her disabling complaints of pain (AR 39; 183; 185); (2) the fact that Plaintiff did not seek treatment from a specialist for depression or her panic attacks; (AR 40; 363-364); (3) Plaintiff worked from 1996-2007 demonstrating that she was able to work with a disabling impairment (AR 40; 159-160; 363); (4) Plaintiff worked for a period of four months in 2010 babysitting two children which suggests she could currently work (AR 39; 62-63; 74-76); (5) Plaintiff took a trip to Kansas to help her friend move during the alleged disability period (AR 39; 76); (6) no diagnosis of fibromyalgia was made by an acceptable medical source such as a rheumatologist or a specialist (AR 40); and (7) Plaintiff's pain was relatively controlled on her medication. (AR 43). These are all clear and convincing reasons that are supported by substantial evidence to reject Plaintiff's testimony. *See Thomas v. Barnhart*, 278 at 958-959; *see also* 20 C.F.R. § 404.1529(c) (ALJ can consider inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; the claimant's daily activities; and the claimant's work record when assessing credibility); *Chaudhry v. Astrue*, 885 F.3d 661, 672 (9th Cir. 2012) (The ALJ may consider an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" in discrediting a claimant's credibility); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (citation omitted) ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such

failure as a basis for finding the complaint unjustified or exaggerated…."); *Warre v. Com'r of Soc. Sec*., 439 F. 3d 1001, 1005 (9th Cir. 2006) (impairment amenable to control is not disabling).

Although Plaintiff contends that the ALJ should have addressed her fatigue as a side-effect of her medications, her contention is without merit.   There are two different approaches in the Ninth Circuit regarding an ALJ's duty to consider medication side effects.  The first approach requires that an ALJ consider all factors that might have a significant impact on an individual's ability to work, including the side effects of medications. *Erickson v. Shalala*, 9 F.3d 813, 817 18 (9th Cir.1993) (citing *Varney v. Secretary of HHS*, 846 F.2d 581, 585 (9th Cir.1987) (superseded by statute on other grounds). Under *Varney*, an ALJ may not reject a claimant's testimony as to subjective limitations of side effects without making specific findings similar to those required for excess pain testimony. *Varney*, 846 F.2d at 585.

The second line of cases has distinguished *Varney* and has held that in order for an ALJ's failure to discuss medication side effects to be in error, the side effects must be a contributing factor in a claimant's inability to work.  *See, Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (no error in a question to a vocational expert that did not include information about side effects because "[t]here were passing mentions of the side effects of Mr. Osenbrock's medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with Osenbrock's ability to work."); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (failure to expressly address medication side effects is not error where there was no record support for side effects); *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985) (claimant had the burden of producing evidence that his use of prescription narcotics impaired his ability to work).

Here, Plaintiff testified that she suffered from pain and fatigue. AR 62; 65-66. However, while she complained of fatigue as early as 2009, at that time she was "[d]oing great on current medications," doing well in school, and was cleared for low impact physical education. AR 41-42; 389-412. While Plaintiff complained of fatigue on-and-off after 2009, there was no indication that it was persistent, that it was a side effect of her medication, or that she had any significant side-effects from her medications. AR 413; 415; 417; 419; 421; 425; 427; 429; 455; 459; 461; 463; 467; 469.

1    Moreover, when the ALJ specifically asked her about the side effects of her medication she

2    indicated that she started taking the Trazodone, Avinza and Lexapro at night because they made

3    her tired. AR 71. There was no indication that these medications limited Plaintiff's ability to

4    work.  In fact, PA Johnson noted that none of Plaintiff's medication caused side effects except

5    that Xanax caused drowsiness and Trazodone caused nighttime sleepiness.[7] AR 445.  A review of

6    the record reveals that Plaintiff was prescribed Xanax intermittently and only took it when it was

7    absolutely necessary. AR 396; 423; 425; 477.  Moreover, the only other time Plaintiff complained

8    of side effects was when she began taking a new medication, but that medication was promptly

9    discontinued. AR 471. Given the record, the ALJ did not err in failing to specifically address the

10   medication side effects in his decision.  Additionally, he properly discounted Plaintiff's

11   allegations of disabling fatigue and other symptoms for the reasons indicated above. AR 39-45.

12   Given the above, the ALJ provided clear and convincing reasons outlined above that are

13   supported by substantial evidence to conclude Plaintiff's subjective symptom testimony was not

14   credible.  Here, the ALJ clearly identified what testimony he found not credible and what

15   evidence undermined Plaintiff's complaints.  *Brown-Hunter*, 806 F. 3d at 493; *Lester*, 81 F.3d at

16   834.  It is not the role of the Court to re-determine Plaintiff's credibility de novo.  If the ALJ's

17   finding is supported by substantial evidence, the Court "may not engage in second-guessing."

18   *Thomas*, 278 F.3d at 959. Although evidence supporting an ALJ's conclusions might also permit

19   an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was

20   rational, as it was here, the Court must uphold the ALJ's decision where the evidence is

21   susceptible to more than one rational interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 680-81

22   (9th Cir. 2005).  Accordingly, the ALJ's credibility determination was proper.

23   **D.  The ALJ Did Not Err at Step Five**.

24   Finally, Plaintiff argues that the ALJ erred at step five because he improperly relied on the

25   VE's testimony that Plaintiff could perform work as an addresser, a lens inserter, or a touch up

26   screener. She contends that the ALJ's analysis was improper because none of the job descriptions

27

---

28   [7] The ALJ discussed PA Johnson's opinion regarding the side effects of Plaintiff's medications when summarizing the medical record in his decision. AR 43.

in the DOT address whether they require more than occasional decision making or occasional changes in the work setting as defined by Plaintiff's RFC. Plaintiff contends that given this ambiguity, the ALJ was required to obtain testimony from the VE to clarify this issue and failure to do so was not harmless error. The Court disagrees.

If Plaintiff establishes that she is unable to perform her past work at step four, the burden shifts to the Commissioner at step five "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [her] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *see also* 20 C.F.R. §§ 404.1560(g), 416.920(g). At this stage, the ALJ first assesses a claimant's "residual functional capacity," which is defined as the most that a claimant can do despite "physical and mental limitations" caused by his impairments and related symptoms. 20 C.F.R. §§ 404.1545, 416.945(a)(1). The ALJ then considers potential occupations that the claimant may be able to perform. *See* 20 C.F.R. §§ 404.1566, 416.966.

Similar to step four, in making this step five determination, the ALJ may rely on the Dictionary of Occupational Titles ("DOT") and testimony from a VE to assess a claimant's ability to perform certain jobs in light of his residual functional capacity. 20 C.F.R. §§ 404.1566(e); 404.1569; 404.1566(d); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  As part of this process, occupational information provided by a VE should generally be consistent with the DOT. SSR 00-04, 2000 WL 1898704, at *2, (Dec. 4, 2000). Furthermore, the ALJ must resolve any apparent conflict between the VE's testimony and the DOT before relying on the VE's testimony in support of a disability determination. *Zavalin v. Colvin*, 778 F. 3d 842, 845 (9th Cir. 2015); *Massachi v. Astrue*, 486 F. 3d 1149, 1153-1154 (9th Cir. 2007).  When there is an apparent unresolved conflict between the VE and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled. *Zavalin v. Colvin*, 778 F. 3d at 846; *Massachi*, 486 F. 3d at 1153. Neither the DOT nor the VE testimony automatically "trumps" when there is a conflict. *Massachi*, 486 F. 3d at 1153. The adjudicator must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for

1   relying on the VE testimony rather than on the DOT information. *Massachi*, 486 F. 3d at 1153.

2           However, not all potential conflicts between a vocational expert's job suitability

3   recommendation and the DOT will be apparent or obvious. *Gutierrez v. Colvin*, 844 F. 3d 804,

4   808 (9th Cir. 2016).  In order for a difference between a VE's testimony and the DOT's listings to

5   be fairly characterized as a conflict, it must be obvious or apparent. *Id.* This means that the

6   testimony must be at odds with the DOT's listing of job requirements that are essential, integral,

7   or expected.  *Id.*  Thus, the obligation to inquire doesn't extend to unlikely situations or

8   circumstances, and the requirement that an ALJ ask follow-up questions to determine if an actual

9   conflict exists is fact-dependent. *Id.*

10          Here, prior to taking the VE's testimony, the ALJ advised the VE to tell him if the

11  testimony was inconsistent with the DOT. AR 83. He then provided the VE with a hypothetical

12  that included all of Plaintiff's limitations including the restrictions that Plaintiff could only

13  perform occasional decision making and occasional changes in the work setting. AR 84-85. The

14  VE did not acknowledge any conflict with DOT and testified that Plaintiff could work as an

15  addresser, a touch up screener, and a lens inserter which were all unskilled positions. AR 85.

16  Unskilled work is that "which needs little or no judgment to do simple duties that can be learned

17  on the job in a short period of time."  20 C.F.R. § 404.1568(a).

18           A review of the proposed jobs reveals the ALJ's finding at step five is supported by

19  substantial evidence.  A lens inserter (DOT 713.687-026) requires level one reasoning which

20  mandates a commonsense understanding to carry out simple one-or two-step instructions, and

21  dealing with standardized situations with occasional or no variable in or from these situations

22  encountered on the job. DOT (4th Ed. 1991), App. C, DOT § III, 1991 WL 688702. The duties of

23  a lens inserter as follows:

24                  Fits lenses into plastic sunglass frames and places frames on
                    conveyor belt that passes under heat lamps which soften frames
25                  preparatory to setting of lenses. DOT 713.687-026, 1991 WL
                    679273.
26

27          An addresser (DOT 209.587-010) and touch up screener  (DOT 726.684-110) require

28  level two reasoning which involves applying a commonsense understanding to carry out details

by uninvolved written or oral instruction, and dealing with problems involving a few concrete variables in or from standardized situations.

Arguably, there may have been a conflict between the VE's testimony and the DOT for the addresser and touch up screener jobs given the need for level two reasoning.[8]  However, since a lens inserter only requires level one reasoning and the job description requires fitting lenses into frames, there is no conflict, or certainly not one that was so apparent that it would require further explanation from the VE. Therefore, the ALJ's conclusion that Plaintiff can work as a lens inserter is proper and his step five analysis is supported by substantial evidence.

**X.      CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal against the Commissioner of Social Security. The Clerk of this Court shall enter judgment in favor of Nancy A. Berryhill, Commissioner of Social Security, and against Plaintiff Jeanne C. Cole. The Clerk of the Court is directed to close this action.

IT IS SO ORDERED.

Dated:   **March 31, 2017**                    **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE

---

[8] The Court need not address this issue since another job is available.